**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PAUL SIRAGUSA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:12-CV-04497-M |
| | § | |
| JEFF ARNOLD and SOCK AND | § | |
| ACCESSORY BRANDS GLOBAL, INC., | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Before the Court is the Motion to Dismiss or Transfer, filed by Defendants Sock and

Accessory Brands, Global, Inc. ("SABG") and its CEO, Jeff Arnold [Docket Entry #13].  SABG

is a Delaware corporation headquartered in North Carolina, and Arnold is a resident of the

Middle District of North Carolina.  This Motion raises two principal questions: (1) whether this

Court is the proper venue to litigate this case, and (2) whether many of Plaintiff Paul Siragusa's

claims fail to state grounds upon which the Court can grant relief.  Finding that this Court is the

proper venue to try this case, the Court **DENIES** Defendants' Motion to Transfer.  However, the

Court **DISMISSES** Siragusa's promissory estoppel, common law fraud, fraudulent inducement,

fraud by nondisclosure, and tortious interference with a prospective contract claims, finding that

they fail to state grounds upon which relief can be granted.

I.      BACKGROUND

Siragusa, a resident of Texas, invented Sneaker Shields, wearable shoe trees that prevent

sneakers from creasing.  During 2008, Siragusa began searching for a partner to market,

distribute, and sell his invention.  In late 2008, Siragusa received two business offers.  SofSole, a

subsidiary of Implus Corporation, offered to pay Siragusa a 10% royalty on sales of Sneaker

Shields, while SABG offered Siragusa a 25% royalty on such sales.  Siragusa contends that

Arnold misrepresented SABG's ability to use the NBA logo on Sneaker Shields, the type of

packaging that would be used, Arnold's sales expectations,  SABG's ability to have Sneaker

Shields sold in various retail shops, and the level of attention and care Siragusa and the product

would receive.  Siragusa contends that these misrepresentations, as well as the higher royalty

rate, induced him to choose SABG over SofSole.

On October 1, 2012, Siragusa claims he

never received a signed copy of it.  Siragusa later became dissatisfied with SABG's performance,

and on August 20, 2012, Siragusa terminated his relationship with SABG, claiming that Arnold

fraudulently induced Siragusa to enter into the contract and that SABG breached multiple

provisions of the contract.  Pl.'s Original Pet., Ex. Q.  No party has furnished a signed contract to

the Court.

On October 1, 2012, Siragusa filed suit against SAGB and Arnold in a Texas state court,

asserting claims against both for promissory estoppel, fraudulent inducement, and tortious

interference with a prospective contract.  Siragusa also alleged that SAGB breached its contract

with him, and that Arnold committed fraud.  Defendants removed the case to this Court on

October 7, 2012.  Defendants ask the Court to dismiss all of Siragusa's claims, except for the

contract claim, and to transfer the remaining claims to the Middle District of North Carolina.

## II.    LEGAL STANDARD

This Court concludes that if transfer is proper, the transferee forum should decide a

motion to dismiss.  *AllChem Performance Prods., Inc. v. Oreq Corp.*, No. 3:11-CV-3577-D,

2013 WL 180460, at *1 n.2 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.).  Accordingly, this Court

will address the issues relating to venue and decide Defendants' Motion to Dismiss only if it

does not transfer the case.

A. § 1391 Standard

Venue is proper in a judicial district in which any defendant resides if all defendants are residents of the state where that district is located, or in a district where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). If no district meets these criteria, the action may be brought in any district where a defendant is subject to the court's personal jurisdiction with respect to the action. *Id.*

B. § 1404(a) Standard

Even if venue is proper, the Court may, "[f]or the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case could have been brought under 28 U.S.C. § 1391. 28 U.S.C. § 1404(a). In deciding whether to transfer, the Court has "broad discretion[.]" *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). However, the Fifth Circuit requires the court to consider a variety of private and public interest factors in making the transfer decision. *LSREF2 Baron, LLC v. Aguilar*, No. 3:12-CV-1242-M, 2013 WL 230381 (N.D. Tex. Jan. 18, 2013) (Lynn, J.). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

III.     DISCUSSION

A.  Venue

The Court must first determine (1) whether it has venue under 28 U.S.C. § 1391, and if so, (2) whether, under 28 U.S.C. § 1404(a), it should transfer the case to the Middle District of North Carolina.

1.    Proper venue under § 1391(b)(2)

Where, as here, no defendants live in the forum, this Court nevertheless has venue if "a substantial part of the events or omissions giving rise to the claim occurred" within the Northern District of Texas.  28 U.S.C. § 1391(b)(2).  "[V]enue does not have to be the place where the most relevant events took place, but the contacts with [that] . . . district must be substantial." *Emelike v. L-3 Commc'ns Corp.*, No. 3:12-CV-2470-M, 2013 WL 1890289, at *3 (N.D. Tex. May 7, 2013) (Lynn, J.).

In *Ancel v. Rexford Rand Corp.*, the plaintiff, a former corporate officer of the defendant, was a resident of Dallas, Texas.  No. CIV. 3:93-CV-2379-H, 1994 WL 539287, at *1 (N.D. Tex. Sept. 19, 1994) (Sanders, C.J.).  The defendant corporation was incorporated and headquartered in Illinois.  The plaintiff alleged that other corporate officers had conspired to oust him from his position by creating a separate corporation, obtaining his consent by misrepresenting how his stock ownership would be affected, and then merging the new corporation with Rexford Rand Corporation, thereby diluting the plaintiff's ownership interest.  The court held that the Northern District of Texas was not a proper venue, reasoning that the "relevant events . . . occurred primarily, if not exclusively, in Illinois" and that the "[p]laintiff's receipt of letters and phone calls in Dallas d[id] not constitute a 'substantial part' of the events . . . that g[a]ve rise to his claim."  *Id.* at *3.

In contrast, in *Long v. Grafton Executive Search, LLC*, Judge Godbey, of this court, found that communications sent and received from this district established that a substantial part of the events giving rise to the claims occurred here.  263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003).  In *Long*, the defendants allegedly defamed the plaintiff through emails and telephone calls, and the "actual content of th[o]se communications gave rise to Long's intentional tort causes of action."  *Id.*  In contrast, the communications to and from the Northern District of Texas in *Ancel* were not central to the events underlying the cause of action.  *Ancel*, 1994 WL 539287, at *3.  This Court concludes that communications to the district can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications.  Moreover, where "false communications are the focus of Plaintiff['s] claims of fraudulent representations . . . . [t]he direction of fraudulent misrepresentations to Dallas, Texas can establish that the events or omissions giving rise to the cause of action occurred in Dallas, Texas."  *TransFirst Holdings, Inc. v. Phillips*, No. 3:06-CV-2303-P, 2007 WL 631276 (N.D. Tex. Mar. 1, 2007) (Solis, J.).

Here, Siragusa and Arnold met in person only once in North Carolina.  Otherwise, they communicated via email and telephone.[1]  Siragusa contends that his former attorney negotiated the contract from Dallas, Texas, via email and telephone, exchanging multiple drafts with Defendants electronically.  As part of Siragusa's breach of contract claims, he alleges that SABG did not email him quarterly royalty reports until well after the dates specified in the contract.  Moreover, Siragusa asserts that before he and SABG reached agreement, in emails sent to

---

[1] Siragusa claims to be a Texas resident, but he does not state the city, county, or judicial district where he resides.  He sometimes states that events occurred in Dallas, Texas and other times refers to the State of Texas.  Defendants do not contend that any relevant events occurred outside the Northern District of Texas, so the Court presumes Siragusa uses "Texas" and "Dallas, Texas" interchangeably.

Siragusa in Texas, Arnold fraudulently represented that the Sneaker Shields would use a type of packaging allowing customers to touch the product, that the packaging would feature the National Basketball Association's logo, that Arnold and SABG had relationships with designated retail shops that would allow SABG to have Sneaker Shields sold in those stores, and that Arnold would maintain a high level of care and attention to Siragusa and Sneaker Shields.  Pl.'s App. Ex. C, at 84–87.  Additionally, Siragusa contends that after the agreement was reached, Defendants misrepresented the status of packaging changes and efforts to market the product in certain stores.  Pl.'s App. Ex. A, at 3–5.  Thus, as in *Long*, a substantial part of the events giving rise to the Plaintiff's claims, specifically Arnold's alleged misrepresentations and the negotiation of the alleged contract, occurred via communications to the Northern District of Texas, making venue in this case proper.  *See* 17–110 Moore's Federal Practice—Civil § 110.04 (collecting cases following a trend to liberally construe the "substantial part of the events" test).

      2.   Venue transfer under § 1404(a)

      Although the Court has venue under § 1391(b)(2), the Court may nevertheless, "for the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case may have been brought under § 1391.  28 U.S.C. § 1404(a).  A plaintiff's choice of forum deserves a degree of deference when a defendant seeks to transfer venue.  *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).  However, Fifth Circuit precedent clarifies that the plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, but "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Volkswagen II*, 545 F.3d at 314–15.  The burden is thus on the party seeking transfer to clearly demonstrate that a different venue would be more appropriate.

In deciding whether to grant transfer, the Court must weigh the various private and public interests. *Id.* The existence of a valid forum selection clause "will be a significant factor that figures centrally in the . . . calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

### a.   Proper venue under § 1391

As an initial matter, the Court must determine whether this case could properly be brought in the proposed alternative venue under § 1391. Here, given that Arnold resides in North Carolina, and SABG is headquartered in North Carolina, venue would be proper in the Middle District of North Carolina under § 1391(b)(1) since "all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

### b.   Forum Selection Clause

The Court now proceeds to determine whether there is a valid forum selection clause that supports transfer. Courts have been hesitant to give effect to contractual provisions designating choice of law and forum selection when the parties have not clearly consented to such terms. *See United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000) (finding that documents were "virtually irrelevant in their unsigned form[s]" and were, therefore, "insufficient to constitute binding forum selection and choice of law provisions"), *aff'd,* 532 U.S. 588 (2001); *Rahco Intern., Inc. v. Laird Elec., Inc.*, 502 F. Supp. 2d 1118, 1123 (E.D. Wash. 2006) (rejecting a plaintiff's argument that a defendant's "continued performance constituted an acceptance of the terms of the *unsigned . . . forum selection clause*" when there is "no indication that the choice of forum was ever bargained for or discussed") (emphasis in original).

Here, the parties confirm that they reached an agreement, but no document has been presented, and Siragusa claims that, despite his request, he never received a copy of it. Pl.'s

App. Ex. A, at 3.  An unsigned agreement was presented by the Defendants to the Court, and it contains the following language:

> 12.8  <u>Governing Law</u>. This AGREEMENT shall be governed by and construed and interpreted with the laws of the State of North Carolina, except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent shall have been granted.  Each PARTY agrees to submit to the exclusive jurisdiction of the State Courts of Cabarrus County, North Carolina, and the United States District Court for the District of North Carolina with respect to any claim, suit or action in law or equity arising in any way out of this AGREEMENT or the subject matter thereof.

Defs.' Am. App. Ex. A, at 13.  Arnold's Declaration states that his "understanding at all times since May 28, 2009 has been that the [unsigned] Agreement . . . was the contract between SABG and Mr. Siragusa."  Defs.' Am. App. Ex. B, at ¶ 5.  By contrast, Siragusa states in his Declaration that he "do[es] not recall seeing a forum selection clause" in the version of the agreement he signed.  Pl.'s App. Ex. C, at ¶ 10.  Siragusa has also provided evidence showing the contract underwent significant changes during the drafting process, and there is no evidence that this forum selection/choice of law provision was specifically discussed.  Pl.'s Resp., Ex. A, at 55.

With the facts before it, the Court cannot determine definitively if the parties agreed to the forum selection/choice of law provisions.  The Court will not enforce such a clause when it is not certain that both parties have consented to it.  Accordingly, the forum selection and choice of law provision in an unsigned document, not otherwise affirmed by the parties, will not affect the Court's transfer analysis.

  c.  Private Interest Factors

   i.  The relative ease of access to sources of proof

Courts in the Fifth Circuit are generally not to consider that the parties' documents are

stored electronically as a basis to minimize the significance of the documents' location in a

1404(a) analysis.  In *Volkswagen II*, the Fifth Circuit held that a district court improperly "read[]

the sources of proof requirement out of the § 1404(a) analysis" when it ruled that "the relative

access to sources proof [wa]s neutral because of advances in copying technology and

information sources."  545 F.3d at 316.  In *Volkswagen II*, because "all of the documents and

physical evidence . . . [were] located in" the potential transferee forum, the Fifth Circuit found

that the factor weighed in favor of transfer.  *Id.*

In this case, however, the only evidence that either party alleges to be relevant is in

electronic form–that is–email transmissions, giving the parties equal access to those documents

in either forum.  Neither party has asserted that other physical evidence will be offered at trial,

and Defendants' vague statement that "proof is more accessible in North Carolina" provides the

court with insufficient information to conclude that the evidence will be more easily accessed in

the Defendants' preferred venue.  For these reasons, the Middle District of North Carolina is not

clearly more convenient with respect to this factor, which the Court therefore finds to be neutral.

      ii.    The availability of compulsory process to secure the attendance of
           witnesses

When key witnesses could be subpoenaed to attend a trial in the potential transferee

forum, but not in the current forum, this factor favors transfer.  However, "transfer from one

district without absolute subpoena power to another such district is not clearly more convenient."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.,* No. CIV.A. 3:08-CV-1637, 2009 WL

774350, at *4 (N.D. Tex. Mar. 24, 2009) (Lynn, J.); s*ee also MHL Tek, LLC v. Nissan Motor

Co.*, No. CIV.A. 2:07-CV-289, 2009 WL 440627, at *5 (E.D. Tex. Feb. 23, 2009).  Under

Federal Rule of Civil Procedure 45, a district court may subpoena a nonparty witness if he or she

lives within the district or "within 100 miles of the place specified for the deposition, hearing,

trial, [etc.]." Fed. R. Civ. P. 45(b)(2).  Additionally, Rule 45 does not require subpoenas to be quashed based on distance if they are issued to parties or party officers.  *RLI Ins. Co. v. Allstate Cnty. Mut. Ins. Co.*, No. CIV.A. 3:07-CV-1256-M, 2008 WL 2201976, at *2 (N.D. Tex. May 28, 2008) (Lynn, J.).  Generally, under Rule 45(b)(2)(C), a district court can issue a subpoena to a nonparty within its state, but under Rule 45(e), a court cannot hold a nonparty in contempt for violating a subpoena if compliance with the subpoena would require the nonparty to travel "more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(3)(A)(ii).

Here, Defendants claim that they need four witnesses who would not be subject to this Court's subpoena power: Ron Moore, David Linker, Jackie Snipes, and Teresa Bridges.  Defs.' Am. App., Ex. B, at ¶¶ 8–11.  Defendants admit that Moore resides in New Jersey, and thus he is not subject to compulsory process in either this district or the Middle District of North Carolina. However, Defendants contend that Linker, Snipes, and Bridges are subject to compulsory process in North Carolina, where they allegedly live.  However, Defendants do not identify where, specifically, these witnesses reside within the state.  Defendants' failure to demonstrate whether Linker, Snipes, or Bridges reside in the Middle District of North Carolina, or within 100 miles of one of the district's courthouses, means that the Court cannot conclude that any witness is clearly subject to compulsory process of the Middle District of North Carolina under Rule 45(b)(2)(A) or (B).  Thus, this factor is neutral.

iii.    The cost of attendance for willing witnesses

"This factor primarily concerns the convenience of nonparty witnesses."  *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10–CV–2466–D, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under

third factor).  A party seeking a transfer must "identify the key witnesses and the general content

of their testimony."  *Sargent v. Sun Trust Bank, N.A.,* No. Civ.A. 3:03-CV-2701, 2004 WL

1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quotation omitted).  "The party seeking

the transfer must specify clearly . . . the key witnesses to be called and their location and must

make a general statement of what their testimony will cover."  15 Charles Alan Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 3851, at 221–22 (3d ed. 2007); *see Magana v.

Toyota Motor Corp.,* No. 3:10–CV–1451–B, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010)

(Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor

because it did not provide name, address, or proposed testimony of any witness who could more

conveniently testify in the proposed transferee district).

 Here, Defendants identify three non-party witnesses: Moore, Linker, and Snipes.

Defendants, however, do not identify the addresses of any of these witnesses, nor do they

adequately specify their proposed testimony.  With respect to Moore and Linker, Defendants

simply assert that the witnesses are "knowledgeable about the facts of this case[,]" without any

further elaboration.  Defs.' Am. App. Ex. B, at ¶ 9–10.  They assert that Snipes "has direct

knowledge regarding the likelihood for retail success of Siragusa's wearable shoe tree product,"

but do not identify his testimony or its source in any more detail.  Defs.' Am. App. Ex. B, at ¶

11.  The limited identification and the absence of the witnesses' location gives the court

inadequate information from which it can determine that these witnesses will be inconvenienced

or that their testimony is necessary.  *See AllChem Performance Products, Inc. v. Oreq Corp.*,

3:11-CV-3577-D, 2013 WL 180460 (N.D. Tex. Jan. 17, 2013) (Fitzwater, J.) (finding that this

factor was neutral where the movants' "attempts to identify who w[ould] be witnesses [we]re too

general[,]" and the movants had "adequately identified only one witness . . . for whom transfer

w[ould] be more convenient"). Therefore, this factor is neutral.

iv.     All other practical problems

The parties have not identified any other private factors that should be considered. Therefore, this factor is neutral.

d.   Public Interest Factors

i.     The administrative difficulties flowing from court congestion

Defendants argue that, because the number of cases per district judge in the Northern District of Texas is roughly 50% greater than that in the Middle District of North Carolina, this factor favors transfer. "But when considering this factor, 'the real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (internal citations omitted). Accordingly, the median time interval from case filing to disposition is a better statistic for this analysis.

This district's median time interval from case filing to disposition is roughly 6.6 months, where that in the Middle District of North Carolina is roughly 9.8 months.[2] Therefore, this factor weighs against transfer.

ii.     The local interest in having localized interests decided at home

A district court "has a strong interest in adjudicating a case involving harm" to an entity within its district. *ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. CIV.A. H-09-992, 2009 WL 2244468, at *13 (S.D. Tex. July 27, 2009). However, a court also has a significant interest in "policing . . . entities operating within its [district] and engaging in interstate business activities." *Id.* Because this case involves citizens of both Texas and North

---

[2]Judicial Business of the United States Courts, Annual Report (2011), 156–157.

Carolina, the contract negotiations and the representations took place in communications to and from both districts, and the products discussed in the contract were sold in both states, the two districts have similar levels of interest in adjudicating this case.  Therefore, this factor is neutral.

> iii.   The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law

A federal court must apply the conflict of laws rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Accordingly, this Court must apply the conflict rules of Texas.  *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3 (1975).  Moreover, because this case was filed in Texas, if the case is transferred, the Middle District of North Carolina would apply Texas choice of law rules.  *See Ferens v. John Deere Co.,* 494 U.S. 516, 524–25, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) (superseded by statute on other grounds); *Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 191, 184 L. Ed. 2d 38 (U.S. 2012) (holding that transferee courts apply the choice of law rules of transferor courts).  Under Texas law, the burden is on the party asserting the application of foreign law to first show the existence of a true conflict of laws and then to demonstrate which law should apply based on state contacts to the asserted claims.  *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Here, while the parties disagree about which state has greater contacts to the claims at issue, neither party has asserted that there is a conflict between the laws of Texas and North Carolina, and therefore, the Court cannot conclude that either forum would present problems of conflicts of law or that either forum would be unfamiliar with the law at issue.  Thus, the remaining factors are neutral.

In sum, none of the applicable factors clearly favor transfer.  All factors are either neutral or weigh against transfer.  "When the transferee venue is not clearly more convenient than the

venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. The Middle District of North Carolina is not a clearly more convenient forum than is the Northern District of Texas. Accordingly, transfer is unwarranted.

B.   Dismissal of Claims

For a pleading to withstand a Rule 12(b)(6) motion to dismiss, it must be properly pled under Rule 8 by, among other things, including "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Accordingly, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must provide "more than an unadorned accusation devoid of factual support," but need not include detailed factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the court must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as [] factual allegation[s]" are not given the same deference. *See Twombly*, 550 U.S. at 555.

Under Rule 9(b), when parties allege fraud, they must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of 'time, place, and contents of the false representations[.]'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (internal citations omitted), by enumerating the "who, what, when, where, and how," *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Siragusa has pleaded claims for breach of contract, promissory estoppel, fraud, fraudulent inducement, and tortious interference. Defendants seek dismissal of Siragusa's claims, except for breach of contract.

1.   Promissory Estoppel Claim Against SABG and Arnold

Defendants contend that, because Siragusa also claims breach of contract, he cannot recover for promissory estoppel under Texas law.  Under Texas law, "the theory of promissory estoppel is not applicable" when "a valid contract" exists.  *Prince v. Miller Brewing Co.*, 434 S.W.2d 232, 240 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).  The Federal Rules, however, allow parties to plead for alternate relief.  Fed. R. Civ. P. 8.

Nevertheless, Siragusa must properly plead the elements of promissory estoppel under Texas law.  Promissory estoppel requires (1) a promise, (2) foreseeability of reliance by the promisor, and (3) substantial reliance by the promisee to his detriment.  *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).  Additionally, "[t]o invoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds."  *See Schuhart v. Chase Home Fin., L.L.C.*, No. C-05-385, 2006 WL 1897263, at *4 (S.D. Tex. July 10, 2006) (citing *Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex. 1982)).  Moreover, at the time the oral promise to sign an agreement is made, that unsigned agreement must be in writing.  *See id.* (citing *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 769 (5th Cir. 1988); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied).

Siragusa alleges that Defendants promised to use their best efforts to have SABG market, distribute, and sell Sneaker Shields, to use the NBA logo on Sneaker Shields, and to sell in excess of 100,000 pairs of the product annually.  Pl.'s App., Ex. A, at 2, 5–6.  Siragusa alleges that he "reasonably and substantially relied" on these promises.  Pl.'s App., Ex. A, at 5–6.  In addition, Siragusa alleges that Defendants knew that he would rely on those promises, given that Defendants knew about SofSole's offer.  Pl.'s App., Ex. A, at 2.  Finally, Siragusa argues that his

reliance on Defendants' promises was to his detriment because Defendants did not deliver on those promises, and he did not proceed with SofSole.  Pl.'s App., Ex. A, at 5–6.

However, Siragusa does not allege that Arnold promised to sign a written agreement. Moreover, even if Arnold had made such a promise, according to Siragusa's own recitation of the facts, Arnold made the relevant promises in 2008, but he did not send Siragusa the first draft of a written agreement until May 2009.  Accordingly, given that Siragusa does not allege that there was a written agreement at the time Arnold's oral promises were made, Siragusa does not properly plead a claim for promissory estoppel.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss this claim.

### 2.   Fraud-Related Claims Against SABG and Arnold

#### a.   Common Law Fraud (Arnold)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter,* 607 F.3d 1029, 1032–33 (5th Cir. 2010).  A fraud claim is subject to the heightened pleading requirement of Rule 9(b).  *See Shandong,* 607 F.3d at 1032.

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *McCall v. Genentech, Inc.,* No. 3:10–CV–1747–B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (Boyle, J.) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a

heightened pleading standard and requires a plaintiff to plead the circumstances constituting

fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Art v. Pilgrim's Pride Corp.,*

632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity

requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker,

state when and where the statements were made, and explain why the statements were

fraudulent." *Williams v. WMX Techs.,* 112 F.3d 175, 177 (5th Cir. 1997).

Here, Siragusa alleges that Arnold represented that he would "sell more than 100,000 pair

of Sneaker Shields annually, . . . take better care of Siragusa than SofSole, [and] be Siragusa's

one point of contact at SABG once the Agreement was signed." Pl.'s App., Ex. A, at 6.  These

representations concern alleged false promises to perform acts in the future, as opposed to "false

representations of an existing material fact." *Herrmann Holdings Ltd. v. Lucent Technologies

Inc.*, 302 F.3d 552, 565 (5th Cir. 2002).  Accordingly, these representations only constitute

actionable fraud if "the promise[s were] made with no intention of performing at the time [they

were] made." *H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, CIV.A.

3:96-CV-2923-D, 2005 WL 265166 (N.D. Tex. Feb. 2, 2005) (Fitzwater, C.J.) (quotation

omitted).  Because Siragusa does not plead any such intent of Arnold, these representations

cannot form the basis of a properly pleaded claim.  *See id.* (dismissing a fraud claim to the extent

it was based on statements promising future performance where plaintiff failed to allege facts

indicating an intent not to perform).

Siragusa also contends that Arnold represented that Siragusa "would make more money

with [SABG] than with SofSole" and "get more favorable results than SofSole" as well as that

Arnold could "get Sneaker Shield into all the stores to which SofSole had access . . . get Sneaker

Shields into Finish Line stores just as soon as Siragusa would sign a license agreement" and

"would be able to use the NBA logo based on Arnold's contacts, relationship and agreements with the NBA."  Pl.'s App., Ex. A, at 2, 6.  However, Siragusa makes the bare assertion that Arnold knew these representations were false or made them recklessly, without any further factual detail.  *Id.* at 6.  Under Texas law, simple allegations of fraudulent intent will not suffice, and "plaintiffs must set forth *specific facts* supporting an inference of fraud."  *Litson–Gruenber v. JPMorgan Chase & Co.*, No. 7:09–CV–056–O, 2009 WL 4884426, at *4–5 (N.D. Tex. Dec. 16, 2009) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)) (emphasis in original).  Siragusa does not plead any facts which indicate that Arnold knew these representations were false when made, but merely that Arnold did not live up to them.  Accordingly, the Court finds that Siragusa has not sufficiently alleged facts to state a plausible claim for fraud.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's common law fraud claim.

### b.  Fraudulent Inducement (SABG & Arnold)

A claim for fraudulent inducement has the same basic elements as a simple fraud claim, but also requires an underlying contract which was induced by the fraud.  *Kevin M. Ehringer Enters., Inc. v. McData,* 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001)).  Fraudulent inducement claims are also subject to the heightened pleading requirement of Rule 9(b).  *Shandong,* 607 F.3d at 1032.  Accordingly, because Siragusa fails to sufficiently allege facts to state a plausible claim for fraud, he also fails to state a plausible claim for fraudulent inducement.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's fraudulent inducement claims.

### c.  Fraud by Nondisclosure (Arnold)

Under Texas law, a plaintiff must include in his allegations of fraudulent nondisclosure that the defendant failed to disclose material facts, that the defendant knew the plaintiff was ignorant of those facts, that the defendant had a duty to disclose them, and that the defendant was deliberately silent. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.). With respect this claim, Siragusa does not allege that Arnold had a duty to disclose facts to him, that Arnold knew Siragusa was unaware of such facts, nor that Arnold was deliberately silent. Thus, Siragusa's claim for fraud by nondisclosure is insufficient under Rule 9(b), and the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's fraud by nondisclosure claim.

3.   Tortious Interference with a Prospective Contract Claim (SABG & Arnold)

Under Texas law, the elements of tortious interference with a prospective contract are:

> (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or it knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet. denied). Here, Siragusa merely offers a rote recitation of the elements of the claim, asserting that "[t]here was a reasonable probability that Plaintiff would have entered into a business relationship with SofSole or another third party . . . . SABG intentionally interfered with the relationship . . . SABG's conduct was independently tortious and/or unlawful . . . . [t]he interference proximately caused Siragusa's damages[, and] Siragusa suffered actual damages due to the tortious interference." Pl.'s App. Ex. A, at 3–5. Such a "formulaic recitation of the elements of a claim for tortious interference with a prospective contract is insufficient to satisfy the pleading requirement of Rule

8." *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp., Inc.,*
CIVA306CV0575P, 2007 WL 4322144 (N.D. Tex. Dec. 10, 2007) (Solis, J.).  Accordingly, the
Court **GRANTS** Defendants' Motion to Dismiss Siragusa's claim for tortious interference with a
prospective contract.

IV. CONCLUSION

Given the absence of a signed contract containing a forum selection clause, the largely
equivalent availability of documents, the indeterminacy of the availability of witnesses, and the
ability of this Court to adjudicate the dispute, the interests of each forum are, at best, equal.
Defendants have therefore failed to carry their burden to support a transfer to the Middle District
of North Carolina.  The Court thus **DENIES** Defendants' Motion to Transfer.

The Court **GRANTS** Defendants' Motion to Dismiss Siragusa's claims for promissory
estoppel, common law fraud, fraudulent inducement, fraud by nondisclosure, and tortious
interference with a prospective contract.  However, the Court **GRANTS** Siragusa leave to
replead such claims within thirty days of the date of this Order.

**SO ORDERED**.

September 16, 2013.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**