UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PAUL SIRAGUSA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:12-CV-04497-M |
| § | |
| JEFF ARNOLD and SOCK AND § | |
| ACCESSORY BRANDS GLOBAL, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint [Docket Entry #24], filed by Defendants Sock and Accessory Brands Global, Inc. ("SABG") and its CEO, Jeff Arnold. For the reasons stated below, the Motion is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

Plaintiff is the inventor of Sneaker Shields, wearable shoe trees that prevent creasing in sneakers. During 2008, Siragusa searched for a partner to market, distribute, and sell his invention. In late 2008, Siragusa received two offers. SofSole offered to pay Siragusa a 10% royalty on sales of Sneaker Shields, while SABG offered Siragusa a 25% royalty on such sales. Plaintiff asserts in the First Amended Complaint that Arnold, on behalf of SABG, represented that: (1) SABG would sell in excess of 100,000 pairs of Sneaker Shields per year; (2) SABG would secure the use of NBA logos on packaging for Sneaker Shields; (3) Arnold would be Siragusa's one point of contact at SABG after an agreement was signed; and (4) the packaging that would be used could be opened, so potential customers could feel the product. Plaintiff claims that in 2009, he signed an exclusive licensing agreement for SABG to market and distribute Sneaker Shields (the "Agreement"), but he claims he never received a signed copy of

the Agreement. Siragusa became dissatisfied with SABG's performance, and on August 20, 2012, Siragusa terminated his relationship with SABG.

On October 1, 2012, Siragusa filed suit against SAGB and Arnold in Texas state court. Defendants removed the case to this Court. Having previously been given an opportunity to replead, Plaintiff asserts claims for breach of contract, fraud, fraudulent inducement, and tortious interference. Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).

## II.  LEGAL STANDARD

For a pleading to withstand a Rule 12(b)(6) motion to dismiss, it must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In analyzing a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must provide "more than an unadorned accusation devoid of factual support," but need not include detailed factual recitations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although courts must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . factual allegation[s]" are not given such deference. *See Twombly*, 550 U.S. at 555.

Under Rule 9(b), when parties allege fraud, they must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of 'time, place, and contents of the false representations,'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (internal citations

omitted), by enumerating the "who, what, when, where, and how," *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

### III.   DISCUSSION

A. **Breach of Contract**

Under Texas law, a breach of contract claim has four required elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 628 (N.D. Tex. 2010) (Lynn, J.) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App—Houston [14th Dist.] 2005, no pet.)). Defendants argue that Plaintiff has not plausibly alleged elements (1), (2), and (4).

   1. **Existence of a Valid Contract**

Defendants contend that the disputed contract could not be performed within one year, and is therefore barred by the Texas statute of frauds. The Texas statue of frauds provides that "an agreement which is not to be performed within one year from the date of making the agreement" is not enforceable unless the agreement is "in writing . . . and signed . . . ." Tex. Bus. & Comm. Code Ann. § 26.01. Defendants do not argue that the Agreement was not written, but maintain that because Plaintiff's operative Complaint does not assert that a representative of SABG signed the disputed contract, Plaintiff's claim should be dismissed for failure to allege the existence of a contract that satisfies the statute of frauds.

Courts interpret the provision of section 26.01 relating to performance within one year narrowly, applying it only to contracts that cannot feasibly be performed within one year. *See Chacko v. Mathew*, 2008 WL 2390486, at *4 (Tex. App.—Houston [14th Dist.] June 12, 2008, no pet.) (denying a defendant's motion for summary judgment on statute of frauds grounds

where the contract at issue did not specify a time for performance). "A contract that could possibly be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds." *Id.* at *3 (citing *Beverick v. Koch Power,* 186 S.W.3d 145, 149 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)); *see also Conceal City, L.L.C. v. Looper Law Enforcement, L.L.C.,* 917 F. Supp. 2d 611, 620 n.10 (N.D. Tex. 2013) (Fitzwater, C.J.).

Defendants argue that the statute of frauds applies to the alleged Agreement because Plaintiff pleads performance lasted longer than one year. However, a statute of frauds analysis is not based on the actual amount of time the contractual arrangement lasted. *Unique Staff Leasing, L.L.C. v. Onder*, 2010 WL 5621289, at *4-8 (Tex. App.—Corpus Christi Dec. 9, 2010, no pet.). Instead, courts look to the terms of a contract to determine whether performance *could* have been rendered in less than one year, independently of whether the contract actually lasted longer or whether performance within one year would be difficult. *See id.* at *4-8 (disregarding the actual duration of performance in favor of the time for performance specified in the contract); *Chacko*, 2008 WL 2390486, at *3 (finding that while performance of a partnership agreement could last longer than a year, performance was feasible within a year, so the statute of frauds did not apply). The *Chacko* court held that where an at-will partnership agreement did not provide a specific date when the partnership would terminate or state that performance within one year was impossible, enforcement of the agreement was not foreclosed by the statute of frauds. *Chacko*, 2008 WL 2390486, at *3. Here, neither party asserts that the Agreement specified a definitive end date for the parties' contractual arrangement, nor that there were contractual terms that would otherwise put the contract within the purview of section 26.01.

However, even if a contract does not specify a performance term, the statute of frauds may nonetheless apply if "extrinsic evidence conclusively proves that the contract *cannot* be completed within one year." *Conceal City, L.L.C.*, 917 F. Supp. 2d at 620 n.10 (quoting *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982)) (emphasis added). Defendants argue that the contract to market, distribute, and sell Sneaker Shields could not be performed within one year, but fail to support this contention. Given the absence of evidence that the Agreement could not be feasibly completed in one year, the Court finds that Plaintiff has plausibly alleged the existence of a valid contract that is not barred by the Texas statute of frauds. *See Chacko,* 2008 WL 2390486, at *4.

### 2. Plaintiff's Performance

Defendants further argue that in his First Amended Complaint, Plaintiff does not adequately describe his obligations under the Agreement, nor plausibly allege his performance. Plaintiff alleged that "Siragusa is a signatory who performed all tasks required of him under the Agreement." Pl.'s Am. Compl. ¶ 4.03. Defendants provide no authority for the proposition that Plaintiff's obligations must be further defined for him to plausibly allege performance. To the contrary, courts have denied motions to dismiss where the plaintiff merely alleged that "it has performed all actions required of it by the . . . Agreement and all conditions precedent to Defendants' duty to perform have been performed[.]" *See Tempur-Pedic Intern. v. Angel Beds L.L.C.*, 902 F. Supp. 2d 958, 970 (S.D. Tex. 2012).The Court also finds that Plaintiff alleged his performance by granting SABG the right to market, distribute, and sell Sneaker Shields and retain 75% of the proceeds. The Court finds that Siragusa plausibly alleged his performance under the Agreement.

### 3. Resulting Injury

Defendants argue that Plaintiff did not identify any lost sales resulting from Defendants' alleged breach, and thus did not allege a recoverable injury. Defendants also argue that granting Plaintiff a damages award would result in a double recovery for Plaintiff, because Plaintiff can still complete the sales that Defendants allegedly failed to make.

When pleading a claim for breach of contract, the plaintiff must assert in sufficient detail the alleged injury caused by the defendants' breach. *Marquis v. OmniGuide*, No. 3:09-cv-2092-D, 2011 WL 321112, at *9 (N.D. Tex. January 29, 2011) (Fitzwater, C.J.). However, this requirement does not mean that the injury must be described in every detail. *See id.* (denying a motion to dismiss where the plaintiff alleged that the defendants diverted customers, but did not specify the name or number of customers lost). Rather, courts must be able to "reasonably infer" that injury resulted from the defendants' actions as described in the complaint. *Id.*

In the First Amended Complaint, Plaintiff alleges that Defendants breached the Agreement by, among other things, failing to use their best efforts to market and sell Sneaker Shields and that, as a result, Plaintiff suffered "direct damages" from sales it lost "as Siragusa was owed a 25% royalty on any sales effectuated by SABG." Based on these assertions, the Court can reasonably infer that Plaintiff alleges that he lost profits he would have otherwise received had Defendants performed their duties under the Agreement. Plaintiff plausibly alleges that Defendants failed to use their "best efforts", as allegedly required by the Agreement, to effectuate sales of Sneaker Shields, and thus, fewer sales of the product occurred, resulting in lost royalties to Plaintiff.

Texas courts measure breach of contract damages on a "benefit of the bargain" theory which "seeks to restore the injured party to the economic position it would have been in had the

contract been performed." *Hoffman v. L & M Arts*, No. 3:10-cv-0953-D, 2013 WL 4511473 at *6 (N.D. Tex. Aug. 26, 2013) (Fitzwater, C.J.) (citing *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App.—Dallas 2004, no pet.)). Here, if Defendants breached the Agreement, Plaintiff would have three choices: make no further sales of Sneaker Shields, sell them himself, or turn to another company like SofSole, who would, if it would make an agreement with Plaintiff, presumably pay Plaintiff a lesser royalty than provided by SABG in the Agreement. Any option would result in a measurable injury to Plaintiff that would not constitute a double recovery—the benefit SABG would have provided, less any costs of Plaintiff to have the benefits performed by himself or others. *See id.* ("Benefit-of-the-bargain damages are calculated by subtracting the value received by the non-breaching party from the value the party expected to receive when the contract was made."). Accordingly, the Court **DENIES** Defendants' Motion with respect to Plaintiff's breach of contract claim.

**B.      Fraud Claims**

    **1.      Common Law Fraud Against Arnold on Behalf of SABG**

The elements of Texas common law fraud are: (1) the defendant made a representation to the plaintiff; (2) that was material; (3) that was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter,* 607 F.3d 1029, 1032–33 (5th Cir. 2010).

A fraud claim is subject to the heightened pleading requirement of Rule 9(b). *Id.* Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed.

R. Civ. P. 9(b); *City of Clinton, Art v. Pilgrim's Pride Corp.,* 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.,* 112 F.3d 175, 177 (5th Cir. 1997).

### a. Particularity of Plaintiff's Allegations of Defendants' Representations

Plaintiff alleges that Arnold made four misrepresentations for SABG: (1) that SABG would sell more than 100,000 pairs of Sneaker Shields annually; (2) utilize the NBA logo on the Sneaker Shields packaging; (3) that Arnold would be Siragusa's one point of contact at SABG once the Agreement was signed; and (4) use packaging which a potential customer could open. Siragusa has not alleged these misrepresentations with sufficient particularity.

Plaintiff has not alleged when the 100,000 sales statement was made or where it was made. "Presumably, the alleged misrepresentation[] [was] made at meetings, conversations, and the like between Plaintiff[] and [Defendants]." *Ricupito v. Indianapolis Life Ins. Co.*, No. 3:09-CV-2389-B, 2010 WL 3855293, at *4-5 (N.D. Tex. Sept. 30, 2010) (Boyle, J.). Plaintiff must identify those particulars.

Plaintiff provides slightly more detail about the alleged representation that Sneaker Shields could use the NBA logo, due to Arnold's contacts, relationship, and agreements with the NBA. On December 29, 2008, Plaintiff sent an email to Arnold stating that he would be moving forward with SABG, and Arnold replied, "GREAT !!! [sic] Implus[1] / NBA[.] [N]o math needed here." Pl.'s Am. Compl., Ex. C. Plaintiff asserts that this communication shows that Defendants "acknowledged that Siragusa was better off with Arnold because of his contacts with the NBA." Pl.'s Am. Compl. ¶ 3.07. Plaintiff also provides an email, allegedly from Arnold, containing

---

[1] Implus Footwear, LLC is the parent company of SofSole, the company that Siragusa declined to work with.

images of proposed packaging for Sneaker Shields, including an NBA logo. Pl.'s Am. Compl. ¶ 3.08, Ex. D. However, Plaintiff does not plead with particularity an actual representation by Arnold that Sneaker Shields could use the NBA logo based on Arnold's connection to the NBA. *See* Pl.'s Am. Compl. ¶ 3.04(c). Plaintiff's broad allegation is insufficient without the actual representations by Arnold and their context. *See Brothers v. Print, Inc.*, No. 3:07-CV-0415-B, 2007 WL 3331974, at *6 (N.D. Tex. Nov. 8, 2007) (Boyle, J.). Without this specificity, Plaintiff's claim fails to meet the requirements of Rule 9(b).

Next, Plaintiff makes no effort to particularize Arnold's alleged promise to be Plaintiff's sole point of contact. The Court finds that Plaintiff does not meet the pleading standard of Rule 9(b) for this alleged misrepresentation.

Finally, Plaintiff also fails to provide detail for Arnold's alleged representation to provide packaging that could be opened by customers. Plaintiff does not describe the particulars of this representation, nor does he explain when or in what context it was made. Instead, the First Amended Complaint merely makes reference to the utility of such packaging, and describes "discussions" between Plaintiff, Arnold, and unspecified retailers in "which *the retailers* explained that it was important for customers to be able to open the packaging to see and touch the product." Pl.'s Am. Compl. ¶ 3.12 (emphasis added). Plaintiff provides emails from Arnold to two individuals, David Linker and Jacqueline Snipes, referencing using such packaging in marketing tests with a retailer, Champs. Pl.'s Am. Compl., Exs. F, G. However, Plaintiff does not identify Linker and Snipes nor their relationship to him or the Defendants. Not only does Plaintiff fail to provide detail of the alleged representation to him, but the emails suggest that Arnold did in fact attempt to use the desired packaging. Plaintiff's allegations are insufficient to satisfy the pleading requirements of Rule 9(b).

### b. Intent

Even if Plaintiff had pleaded the alleged misrepresentations with particularity, he did not plausibly plead Arnold's intent or knowledge. Plaintiff asserts that "Arnold knew at the time he made these representations that either (a) the representations were false or (b) the representations were made recklessly as a positive assertion without knowledge of their truth." Pl.'s Am. Compl. ¶ 5.03. As noted in the Court's Order on Defendants' first Motion to Dismiss, Arnold's alleged misrepresentations concern promises to perform in the future, not "false representations of an existing material fact." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002). Such statements are actionable only if "the promise[s were] made with no intention of performing at the time [they were] made." *H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, CIV.A. 3:96-CV-2923-D, 2005 WL 265166 (N.D. Tex. Feb. 2, 2005) (Fitzwater, C.J.) (quotation omitted).

Under Texas law, conclusory allegations of fraudulent intent will not suffice; rather "plaintiffs must set forth *specific facts* supporting an inference of fraud." *Litson–Gruenber v. JPMorgan Chase & Co.*, No. 7:09–CV–056–O, 2009 WL 4884426, at *4-5 (N.D. Tex. Dec. 16, 2009) (O'Connor, J.) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)) (emphasis in original). Plaintiff does not provide specific facts that support an inference of fraud, only assertions "whose formulation presume[s] facts of a vague and unspecific nature." *Litson–Gruenber*, 2009 WL 4884426, at *4-5.

Plaintiff does not identify facts which demonstrate that Arnold "made no effort to actually use the NBA logos[,]" or that Arnold "clearly never intended to sell even 100,000 units[.]" Pl.'s Am. Compl. ¶¶ 5.04(1)-(c). "[S]uch conclusory statements are insufficient under Rule 9(b)." *Litson-Gruenber*, 2009 WL 4884426, at *5.

The few specific facts that Plaintiff provides do not support an inference that Arnold did not intend to perform. Plaintiff asserts that Arnold had some prior business relationship with the NBA, but that eventually he told Plaintiff that royalties for use of the NBA logo would be cost-prohibitive. Pl.'s Am. Compl. ¶ 5.04(a). Plaintiff also asserts that Arnold presented to Plaintiff a "mock-up" of packaging that would open, but declined to use it because of its expense. Pl.'s Am. Compl. ¶ 5.04(d). These alleged facts demonstrate, at most, only that Arnold became concerned with the cost of these potential aspects of marketing of the product, not that Arnold never intended to use them. As was true in the Original Complaint, which the Court directed Plaintiff to replead, Plaintiff has not pleaded "any facts which indicate that Arnold knew these representations were false when made, but merely that Arnold did not live up to them." *Siragusa v. Arnold*, No. 3:12-cv-04497-M, 2013 WL 5462286, at *10 (N.D. Tex. Sept. 16, 2013) (Lynn, J.). Because Plaintiff does not provide adequate factual detail concerning the alleged representations or Arnold's intent, the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's common law fraud claim.

2. **Fraudulent Inducement**

A claim for fraudulent inducement has the same basic elements as a fraud claim, but requires the additional element that a party was induced by fraud to enter into a contract. *Kevin M. Ehringer Enters., Inc. v. McData,* 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001)). Fraudulent inducement claims are also subject to the heightened pleading requirement of Rule 9(b). *Shandong,* 607 F.3d at 1032. Because Siragusa fails to sufficiently allege facts to state a plausible claim for fraud, he fails to state a plausible

claim for fraudulent inducement. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's fraudulent inducement claim.

C.     **Tortious Interference with a Prospective Contract**

Under Texas law, the elements of a claim for tortious interference with a prospective contract are:

> (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or it knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet. denied). For the second element, "the defendant's conduct must be actionable under a recognized tort." *Hambric Sports Mgmt., L.L.C. v. Team AK, Inc.*, No. 3:09-cv-1662-L, 2010 WL 2605243, at *10 (N.D. Tex. June 29, 2010) (Lindsay, J.) (citing *Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 712 (Tex. 2001)). The only torts asserted in the First Amended Complaint are fraud and fraudulent inducement, and the Court has dismissed these claims, leaving Plaintiff without "an independently tortious or unlawful act by the defendant that prevented the relationship from occurring." *Johnson*, 188 S.W.3d at 304 (internal quotation omitted). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Siragusa's claim for tortious interference with a prospective contract.

## IV.     CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion. The Motion is **DENIED** with respect to Plaintiff's breach of contract claim. The Motion is **GRANTED** with respect to Plaintiff's claims for common law fraud, fraudulent inducement, and tortious

interference with a prospective contract. Because the Court previously granted Plaintiff permission to replead his fraud claims—the only torts alleged by Plaintiff—but he has again failed to allege these claims with sufficient particularity under Rule 9(b), the Court concludes that allowing further amendment will be futile and cause needless delay, and therefore, these claims are **DISMISSED with prejudice**. *See Patel v. Pac. Life Ins. Co.*, No. 3:08-CV-248-B-BD, 2010 WL 3464992, at *5-6 (N.D. Tex. Aug. 27, 2010) (Boyle, J.) (dismissing fraud claims with prejudice where the court granted plaintiffs leave to replead such claims, but their amended allegations failed to overcome the Rule 9(b) pleading deficiency previously identified by the court).

    **SO ORDERED**.

    July 16, 2014.

                                                  **BARBARA M. G. LYNN**
                                                  **UNITED STATES DISTRICT JUDGE**
                                                  **NORTHERN DISTRICT OF TEXAS**